CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILE, VA
FILED

JUL 07 2015

JULIA C DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

(Charlottesville Division)

| | |
|---|---|
| CHARLOTTE TERRELL, | ) |
| Plaintiff, | ) Civ. No. 315cv00034 |
| v. | ) |
| MIDLAND CREDIT MANAGEMENT, INC., | ) JURY TRIAL REQUESTED |
| Defendant. | ) |

## COMPLAINT

1. Plaintiff Charlotte Terrell sues defendant Midland Credit Management, Inc. for violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.* Midland applied interest to Ms. Terrell's account in a manner Ms. Terrell believes to be in excess of that allowed by law; when Ms. Terrell requested that Midland explain its interest, Midland provided her with a purported explanation that was in fact no explanation at all, leaving Ms. Terrell still in the dark about how Midland was applying interest. Jurisdiction over plaintiff's claim lies in this court pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d). Venue is proper in this court as the letter at issue in this lawsuit was sent to Ms. Terrell at her home address in the City of Charlottesville.

## PARTIES

2. Plaintiff Charlotte Terrell is an adult resident of the City of Charlottesville. She is a consumer within the meaning of the FDCPA. 15 U.S.C. § 1692(a)(3).

1

3. Defendant Midland Credit Management, Inc., is a Kansas corporation with its principal place of business in San Diego, California. Midland Credit Management, Inc. is a debt collector within the meaning of the FDCPA because it uses the mails in any business the principal purpose of which is the collection of any debts, and because it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. 15 U.S.C. § 1692(a)(6).

## FACTS

*Defendant's business model*

4. Midland Funding, LLC (not a party to this action) is a debt buying company engaged in the business of purchasing debts from creditors who have written the debts off as uncollectable. When debts go unpaid, original creditors often no longer find it profitable to attempt to collect on those debts. These debts are packaged into large portfolios for sale to debt buyers like Midland Funding. Midland Funding generally purchases debts at a steep discount, and pays mere pennies for each dollar of the face value of the debt it will attempt to collect.

5. After purchasing charged-off debts, Midland Funding then contracts with its affiliate, defendant Midland Credit Management, Inc., to service and collect those debts. Midland Funding and Midland Credit Management are both owned by a parent company, Encore Capital Group (not a party to this action), the biggest debt buyer in the world. Midland Funding does not have any employees who directly contact consumers in the collection of debts, due to the corporate structure and parent relationship between Midland Funding and Midland Credit Management. Midland Credit Management is

2

responsible for collecting on the accounts of Midland Funding, and furnishing information regarding those accounts to consumer reporting agencies.

*Plaintiff's JC Penney account*

6. Plaintiff Charlotte Terrell obtained a credit card from GE Money Bank or its predecessor entity (not a party to this action) on or about December 11, 1997 for use at JC Penney (not a party to this action). This was an open-end credit account.

7. Ms. Terrell used the JC Penney account for personal, family or household purposes.

8. While the JC Penney card account was active, GE Money Bank charged interest on the account, pursuant to the applicable Terms and Conditions agreement(s).

9. At some point in time, Ms. Terrell fell upon hard times, became unable to pay her balance on the account, and defaulted on the account.

10. The regular business practice of GE Money Bank, like most open-end credit card issuers, is to continue to apply interest and fees to its defaulted open-end credit card accounts for a period of about 180 days after the date of default. During this period, they continue to send monthly statements to the cardholder detailing the interest and fees posted to the account, as they are required to do by the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, and its implementing regulations.

11. The regular business practice of GE Money Bank, like most open-end credit card issuers, is to discontinue applying interest and fees to its defaulted open-end credit card accounts after 180 days have elapsed from the date of default. After this, they no longer send monthly statements to the cardholder detailing the interest and fees posted

3

to the account, because they are no longer required to do so by the Truth in Lending Act and its implementing regulations.

12. Pursuant to its regular practice, GE Money Bank continued to apply interest and fees to Ms. Terrell's defaulted open-end credit account for about 180 days after the date when Ms. Terrell defaulted on her obligation to pay. During this 180-day period, GE Money Bank continued to send Ms. Terrell a monthly statement detailing all interest and fees posted to the account.

13. However, about 180 days after the date when Ms. Terrell defaulted on her obligation to pay, GE Money Bank decided to stop adding interest and fees to the account, and also stopped sending Ms. Terrell any more monthly statements.

14. GE Money Bank ceased charging interest on Ms. Terrell's account on or around August 21, 2009, at which point Ms. Terrell allegedly owed $6,185.

15. After its August 21, 2009 decision to stop adding late fees or interest to the account, GE Money Bank never accrued any additional interest or fees to Ms. Terrell's defaulted account, nor did it send any more monthly statements to Ms. Terrell.

16. By declining to accrue any additional interest or fees to the account, GE Money Bank intentionally waived any right to charge any further interest or fees to the account.

*Midland's acquisition of the JC Penney account*

17. Midland Funding, LLC claims to have purchased the GE Money Bank account on or around January 10, 2010, whereupon it assigned the account to its affiliate,

4

defendant Midland Credit Management, Inc. to service and collect the debt and to report the debt to the credit reporting agencies.

18. Since January 2010, defendant has added at least $4,702 to this account, now claiming on Ms. Terrell's credit reports that Ms. Terrell owes $10,887.

19. When Ms. Terrell pulled her credit reports in December 2014, she was shocked to find that defendant claimed such a high outstanding balance, when she knew that her final balance on the credit card was much less.

20. Ms. Terrell sent defendant a letter on February 9, 2015, requesting more information on her account, including monthly account statements indicating how defendant had reached such a high amount.

21. Ms. Terrell then followed up on her letter with a phone call to defendant on February 27, 2015. During this call, an employee of defendant represented to Ms. Terrell that she now owes $10,887.06 on the account, but did not provide any detailed information on how that figure was obtained.

22. Defendant then sent a letter to Ms. Terrell on March 4, 2015. A copy of that letter is attached hereto as Exhibit A, and its contents are incorporated herein by reference.

23. Defendant's March 4, 2015 letter states, "Current Balance: $10,887.06."

24. Notwithstanding the fact that plaintiff had requested – both in her letter and in her phone call – that defendant provide an explanation as to how it calculated its current balance, defendant's March 4, 2015 letter did not provide any explanation of how the alleged Current Balance was calculated. Indeed, the March 4, 2015 letter gave plaintiff no way of determining whether or not the Current Balance was correct.

5

25. Defendant's March 4, 2015 letter also contained as an attachment a purported copy of the charge-off account statement from the original creditor. However, this account statement shows a balance of $6,185.34, and shows that the original creditor posted no interest to the account for that period. Accordingly, the account statement in no way helps Ms. Terrell solve the mystery of why defendant claims a Current Balance in excess of ten thousand dollars.

26. Ms. Terrell is entitled to know whether and how defendant has accrued interest to the account since purchasing the debt, and/or whether and how defendant has retroactively added interest to the account for the period of time between the charge-off and defendant's purchase of the debt, and/or whether and how defendant has added any fees to the account at any time, in order to determine for herself whether the Current Balance stated by defendant is correct.

27. Defendant sent plaintiff the March 4, 2015 letter at least in part in order to induce the plaintiff to pay $10,887.06 to the defendant.

28. Defendant's March 4, 2015 letter caused stress and anxiety to Ms. Terrell, in that it caused her to believe that she in fact might have to pay more than ten thousand dollars to defendant, where she previously understood that she owed far less than that.

## CAUSE OF ACTION:
### Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*

29. At all times relevant to this action, defendant was a debt collector within the meaning of the FDCPA because it is a business which uses instrumentalities of interstate commerce while engaged in its primary business of collecting debts. 15 U.S.C.

6

§ 1692(a)(6). Ms. Terrell is a consumer within the meaning of the FDCPA, 15 U.S.C. § 1692a(3).

30. By denying Ms. Terrell sufficient information to effectively determine her Current Balance, as set forth above, defendant unfairly represented those debts in an attempt to collect a debt in violation of 15 U.S.C. §§ 1692e(2)(A), 1692e(2)(B), and 1692e(10) and also used an unfair means to attempt to collect a debt in violation of 15 U.S.C. §§ 1692f and 1692f (1), to Ms. Terrell's injury, and is thus liable to her in damages.

31. By charging or attempting to charge Ms. Terrell sums of money that were not expressly authorized by the agreement creating the debt nor permitted by law, defendant violated the Fair Debt Collections Practices Act, 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(2)(B), 1692e(10), 1692f, and 1692f(1), to Ms. Terrell's injury, and is thus liable to her in damages.

32. Defendant's noncompliance with the FDCPA was intentional within the meaning of 15 U.S.C. § 1692k(c), as defendant intended to mail the letter that it did in fact mail to Ms. Terrell, and did intend, by mailing that letter, to induce Ms. Terrell to pay the amount of $10,887.06 to the defendant.

## REQUESTED RELIEF

Wherefore, plaintiff Charlotte Terrell respectfully requests this court provide the following relief:

1. An award of statutory damages of $1,000, pursuant to the FDCPA, 15 U.S.C. § 1692k(a)(2)(A), as well as actual damages (included but not limited to emotional distress) as determined by the jury, pursuant to 15 U.S.C. § 1692k(a)(1);

2. An award of plaintiff's costs and reasonable attorney's fees, as appropriate under the FDCPA, 15 U.S.C. §1692k(a)(3); and

3. Such other and further relief as this court deems necessary and proper.

Plaintiff requests trial by jury.

Respectfully submitted,

LEGAL AID JUSTICE CENTER

By: _____  Date: 7/7/15
Kimberly A. Rolla (VSB No.: 85625)
Simon Y. Sandoval-Moshenberg (VSB No.: 77110)
6066 Leesburg Pike, Suite 520
Falls Church, Virginia 22041
Ph: (703) 778-3450 x 605
Fax: (703) 778-3454
simon@justice4all.org
*Counsel for plaintiff*